Steven I. Adler, Esq.
**MANDELBAUM BARRET PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
t. 973.736.4600
f. 973.325.7467
*Attorneys for Plaintiff the Radiology Center*
*at Harding Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE RADIOLOGY CENTER AT HARDING, INC., | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| HITACHI HEALTCARE AMERICAS, FUJIFILM HEALTHCARE AMERICAS CORPORATION, | |
| Defendants. | |

Plaintiff, the Radiology Center at Harding Inc., by way of Complaint against Defendants Hitachi Healthcare Americas and Fujifilm Healthcare Americas Corporation, states as follows:

## PARTIES

1.    Plaintiff the Radiology Center at Harding, Inc. ("Radiology Center" or "Plainitff") is a New Jersey Corporation having an address of 1201 Mount Kemble Ave., Morristown, New Jersey 07960.

2.    Radiology Center is owned by Preetham Pillarisetty ("Pillarisetty").

3.    Upon information and belief, Defendant Hitachi Healthcare Americas ("Hitachi") is an Ohio company, authorized to do business in the State of New Jersey, with an address of 1959 Summit Commerce Park, Twinsburg, Ohio 44087.

4.      Upon information and belief, Defendant Fujifilm Healthcare Americas Corporation is an Ohio company, authorized to do business in the State of New Jersey, with an address of 1959 Summit Commerce Park, Twinsburg, Ohio 44087. (Hitachi and Fujifilm are collectively referred to as "Defendants").

5.      Upon information and belief, Hitachi was acquired by Fujifilm on or about December 17, 2019.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy is greater than $75,000.00, and there is diversity of citizenship among all of the parties.

7.      Pursuant to 18 U.S.C. §1391, venue is appropriate because a substantial portion of the events giving rise to this dispute occurred in, and Plaintiff sustained damages within, this District.

## FACTS

8.      On or about September 17, 2019, Radiology Center and Hitachi entered into an agreement (the "Purchase Agreement") to purchase a Hitachi Arietta 70 Ultrasound System S/N U7AR0510, and Sofia System: 20181001-00089 (collectively the "Ultrasound Machine"). A true and correct copy of the Purchase Agreement is attached hereto as Exhibit A.

9.      The Hitachi sales representative who sold Radiology Center the Ultrasound Machine was Aaron Morris ("Morris").

10.     The price for the Ultrasound Machine was $199,950.00. Radiology Center also purchased the Hitachi Cares 5-Year Service Coverage (the "Service Agreement") for $44,954.00

and paid New Jersey sales tax in the amount of $16,224.92. The Service Agreement is attached hereto as Exhibit B.

11.     Accordingly, the total amount Radiology Center paid for the Ultrasound Machine and service contract was $261,129.42 (the "Purchase Price").

12.     The Service Agreement required Hitachi to make any repairs and/or service the Ultrasound Machine required for five-year period after the Ultrasound Machine's initial one-year warranty period (a six-year period total).

13.     The Service Agreement provides that all parts, labor, probe coverage, inspections, assistance, upgrades and loaners, would be fully covered at no expense to Radiology Center. See Exhibit B at p. 3.

14.     To purchase the Ultrasound Machine, on or about October 9, 2019 Radiology Center obtained a loan from Santander Bank in the amount of $250,000 (the "Commercial Loan"). The Commercial Loan documents are attached hereto as Exhibit C.

15.     The Commercial Loan was to be paid over an eighty-four (84) month period at a 5.61% interest rate per annum ending on October 11, 2026. The monthly payments are $3,615.54.

16.     On or about October 10, 2019, the Ultrasound Machine was delivered to Radiology Center's office.

17.     Shortly thereafter, upon information and belief, Hitachi was acquired by Fujifilm on or about December 17, 2019.

18.     The Ultrasound Machine has two (2) key components, the Arietta component and the Sofia component. The Arietta component is a hand-held device while the Sofia component is a bed-like scanner.

3

19.     Hitachi advertises the Ultrasound Machine as an "Accurate, Efficient and Comfortable Breast Ultrasound".[1]

20.     Hitachi advertises the Sofia component as "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10-minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[2]

21.     Unlike a traditional mammogram/ultrasound machine requiring a patient to stand for a scan, ultrasound, and/or mammogram, the Sofia component allows a patient to lay on their stomach to scan dense breast tissue.[3]

22.     The Sofia component is intended to be a more comfortable and private way to conduct scans, ultrasounds, and mammograms.

23.     Pillarisetty relied upon these representations when making the decision to purchase the Ultrasound Machine.

24.     Upon delivering the Ultrasound Machine, the Sofia component never worked properly.

25.     The Sofia component was unable to properly detect potentially cancerous cysts, a basic requirement for an ultrasound device.

26.     Radiology Center's radiologists notified Pillarisetty about the issues they were encountering with the Sofia component.

27.     In response to these issues, Pillarisetty contacted, via telephone, Morris numerous times to remedy this issue.

28.     In efforts to fix the non-functioning Sofia component, Hitachi sent a service technician named Miguel Bayas ("Bayas"), to Radiology Center on three occasions.

---

[1] *See* https://social-innovation.hitachi/en-us/solutions/life_economy/sofia-3d/
[2] *Id.*
[3] *Id.*

29.     Bayas visited Radiology Center on August 17, 2020, October 10, 2021 and July 6, 2022. True and correct copies of the Service Work Order Summary's for each visit are annexed hereto as Exhibit D.

30.     Despite these three service calls, Bayas was unable to repair the Sophia component to a functional state.

31.     Ignoring the issues with the Sofia component, Morris informed Radiology Center that the radiologists/technicians needed additional training for the Sofia component.

32.     Morris scheduled two (2) training days, however, due to the COVID-19 pandemic Hitachi's offices closed, and the training did not occur.

33.     As the COVID-19 pandemic came to an end, Pillarisetty left several voicemails on Morris's personal cellphone regarding the Sofia component not functioning properly.

34.     In or around June of 2022, Morris finally returned Pillarisetty's call and advised he was no longer employed by Hitachi.

35.     Morris also advised that prior to his departure he was told by Defendants' higher ranking management members Gordon Parhar ("Parhar") and Hideyuki Honda ("Honda"), that the Ultrasound Machine was potentially either being discontinued or phased out.

36.     Morris did assure Pillarisetty that Defendants would continue to offer support for the Ultrasound Machine.

37.     On July 14, 2022 Pillarisetty emailed Ashley Tonsing, a Fujifilm Sales Operation Manager, outlining the issues with the Sophia component. Pillarisetty stated:

> [Morris] sold us the machine. He promised a lot on [the] Sofia [component]. Nothing was true… it is not performing as [] promised. It is not able to identify the cysts and we missed on lot of patients. We had issues from [r]eferring doctors too as we missed properly diagnosing the patients as Sofia did not identify. I will like to make a complain[t] to

4861-4820-1043, v. 3

Fuji[film] / Hitachi and return this machine. Also we did incur [a] lot of interest because we financed through Santander bank."

38.    Ms. Tonsing responded to Pillarisetty's July 14, 2022 email, by copying Parhar, who allegedly was better suited to assist.

39.    Parhar replied to the Pillarisetty's email, as follows wrote:

In summary, you are stating that Arron Morris who sold you the machine told you the Sofia [component], as an ABUS scanner would provide results equal to handheld ultrasound, e.g. a diagnostic device, thus potentially eliminating the need for handheld ultrasound to be performed by a sonographer. In your words "Aaron promised the sky" but you are still unsatisfied even though we provided additional training resources after the installation. Now you would like to return the Sofia and the ultrasound scanner.

[A true and correct copy of this email exchange is attached hereto as Exhibit E.]

40.    On August 26, 2022, Parhar emailed Pillarisetty offering $50,000 to purchase back the Ultrasound Machine.

41.    On that same day, Pillarisetty responded to Parhar stating that the machine was sold to Radiology Center using false promises and does not even work for it's intended screening purposes. A true and correct copy of this email exchange is attached hereto as Exhibit F.

42.    On September 12, 2022, Pillarisetty again emailed Prahar to determine if Defendants' $50,000 settlement offer had changed. A true and correct copy of this email is attached hereto as Exhibit G.

43.    Defendants never offered Radiology Center a replacement and/or loaner Ultrasound Machine.

44.    Due to the Sofia component's incorrect readings, Radiology Center's radiologists refused, and continue to refuse, to use the Ultrasound Machine.

43.    While the Sofia component fails to perform basic ultrasound machine functions, Radiology Center has, and continues to, make loan payments pursuant to the Commercial Loan.

44.     The Ultrasound Machine is still advertised and listed for sale on Hitachi's website.[4]

## FIRST COUNT
### [Violation of the Consumer Fraud Act]

45.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

46.     As a merchant in the State of New Jersey, Defendants are subject to the Consumer Fraud Act (the "CFA"), N.J.S.A. §56:8-1 et. seq.

47.     The CFA Regulations prohibit, inter alia, the use of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation … in connection with the sale or advertisement of any merchandise…". N.J.S.A. §56:8-2.

48.     The CFA regulations define "merchandise" to include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale. See CFA, §56:8-1c.

49.     The CFA regulations define the term "sale" to include any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute. See CFA, §56:8-1(e).

50.     Defendants sold the Ultrasound Machine to Radiology Center.

51.     Defendants delivered and serviced the Ultrasound Machine to Radiology Center's premises.

52.     Defendants failed to cure the Ultrasound Machine of its' issues, specifically the Sofia component failing to detect cysts.

---

[4] *Id.*

53.     Defendants committed a misrepresentation, unconscionable commercial practice or other affirmative, wrongful acts in direct violation of, among other things, the CFA, by selling the Ultrasound Machine to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes and which would not pass without objection.

54.     Defendants' violations of the CFA Regulations are *per se* violations.

55.     As a direct result of Defendants' violations of the CFA, Plaintiff suffered an ascertainable loss, in the amount of the unlawful sale of the Ultrasound Machine.

56.     The aforesaid conduct of Defendants was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

## SECOND COUNT
### [Breach of Contract as to the Purchase Agreement]

57.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

58.     In September of 2019, Plaintiff and Hitachi entered into the Purchase Agreement.

59.     Pursuant to the Purchase Agreement and related documents exchanged between Plaintiff and Defendants, the parties entered into a contractual relationship wherein Plaintiff agreed to purchase the Ultrasound Machine from Hitachi in total amount of $199,950.00, exclusive of sales tax.

60.     Despite Plaintiff paying this amount in full, Defendants have failed to deliver an operational Ultrasound Machine and Sofia component, "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10-minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[5]

_____

[5] *Id.*

61.     Defendants are in further breach of the Purchase Agreement by failing to refund to Radiology Center the Purchase Price after they sold the Ultrasound Machine to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes and one that would not pass without objection in the trade.

62.     Based upon such breaches Plaintiff has been, and will continue to be, damaged.

### THIRD COUNT
**[Breach of Contract as to the Service Agreement]**

63.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

64.     In September of 2019, Plaintiff and Hitachi entered into the Service Agreement.

65.     Pursuant to the Service Agreement and related documents exchanged between Plaintiff and Defendants, the parties entered into a contractual relationship wherein Plaintiff agreed to purchase a service contract from Hitachi in total amount of $44,954.00, exclusive of sales tax.

66.     The Service Agreement provided that, if the Ultrasound Machine required service and/or repairs, all parts, labor, probe coverage, inspections, assistance, upgrades and loaners, would be fully covered by Defendants, at no expense to Radiology Center.

67.     Upon delivery, the Sofia component of the Ultrasound Machine failed to perform and/or failed to perform properly, basic ultrasound tasks, such as detecting cysts.

68.     On three (3) occasions, Defendants sent a service technician to repair the Sofia component.

69.     Despite these three (3) attempts to repair the Sofia component, Defendants' failed to repair the Ultrasound Machine to a useable and reliable state, as required by the Service Agreement.

70.     To date, Defendants have failed to repair, or replace, the Ultrasound Machine.

71.     Defendants are in further breach of the Service Agreement, among other things, by, failing to reimburse Radiology Center for the cost of the Service Agreement when Defendants failed to repair the Sofia component properly.

72.     Based upon such breaches Plaintiff has been, and will continue to be, damaged.

## **FOURTH COUNT**
### **[Fraud]**

73.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

74.     Defendants, through their agents, represented the Ultrasound Machine to Plaintiff, among other things, as a scanner that would provide results equal to handheld ultrasound, e.g. a diagnostic device, eliminating, or potentially eliminating, the need for handheld ultrasound to be performed by a sonographer.

75.     Hitachi advertised the Sofia component as "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10-minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[6]

76.     These statements were made with the intent that prospective purchasers would rely on them.

77.     Plaintiff reasonably relied on these misrepresentations when making the decision to purchase the Ultrasound Machine.

78.     In reality, the Sofia component of the Ultrasound Machine failed to detect cysts, a basic requirement for an Ultrasound Machine.

79.     Because the Sofia component failed to perform basic functions, Radiology Center's radiologists have refused to use the Ultrasound Machine.

---

[6] *Id.*

4861-4820-1043, v. 3

80.     As a result of Plaintiff's reasonable reliance on Defendants' misrepresentations, Plaintiff has been and will continue to be damaged.

## FIFTH COUNT
### [Fraudulent Inducement]

81.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

82.     Defendants, through their agents, advertised the Ultrasound Machine, among other things, as a scanner that would provide results equal to handheld ultrasound, e.g. a diagnostic device, eliminating, or potentially eliminating, the need for handheld ultrasound to be performed by a sonographer.

83.     Hitachi advertised the Sofia component as "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10-minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[7]

84.     These statements were knowingly false at the time they were made.

85.     Plaintiff reasonably relied on these misrepresentations when making the decision to purchase the Ultrasound Machine.

86.     In further reliance on Defendants' misrepresentations, Pillarisetty obtained a Commercial Loan to pay for the ultrasound machine.

87.     In reality, the Sofia component of the Ultrasound Machine failed to detect cysts, a basic requirement for an Ultrasound Machine.

88.     Radiology Center's radiologists do not trust the Ultrasound Machine and refuse to use it.

---

[7] *Id.*

4861-4820-1043, v. 3

89.     As a result of Plaintiff's reasonable reliance on Defendants' misrepresentations, Plaintiff has been and will continue to be damaged.

## SIXTH COUNT
### [Negligent Misrepresentation]

90.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

91.     Defendants, through their agents, negligently misrepresented to Radiology Center, among other things, that the Ultrasound Machine as a scanner would provide results equal to handheld ultrasound, e.g. a diagnostic device, eliminating, or potentially eliminating, the need for handheld ultrasound to be performed by a sonographer.

92.     Hitachi advertised the Sofia component as "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10 minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[8]

93.     These statements were incorrect.

94.     Plaintiff justifiably relied upon these negligent misrepresentations when making its' decision to purchase the Sofia component.

95.     The Ultrasound Machine was sold and delivered to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes and one that would not pass without objection in the trade.

96.     The Sofia component failed to perform basic functions, such as detecting cysts.

97.     Because the Sofia component failed to perform basic functions, the Radiology Center's radiologists have refused to use the Ultrasound Machine.

98.     Plaintiff has continued to make loan payments on the Sofia machine, while its'

---

[8] *Id.*

radiologists refuse to use it due to its failures.

99.     As a result of Plaintiff's justifiable reliance on Defendants' misrepresentations, Plaintiff has been and will continue to be damaged.

## SEVENTH COUNT
### [Common Law- Breach of Express Warranty]

100.     Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

101.     Defendants, through their agents, intentionally and/or negligently misrepresented to Radiology Center that the Ultrasound Machine as a scanner would provide results equal to handheld ultrasound, e.g. a diagnostic device,  eliminating, or potentially eliminating, the need for handheld ultrasound to be performed by a sonographer.

102.     Hitachi advertised the Sofia component and expressly warranted that it was "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10 minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[9]

103.     These express warranties about the Sofia component were false.

104.     Plaintiff reasonably relied upon these warranties when making its' decision to purchase the Sofia.

105.     The Ultrasound Machine was sold to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes.

106.     The Sofia component failed to perform basic functions, such as detecting cysts.

107.     Because the Sofia component could not perform basic ultrasound machine functions, Radiology Center's radiologists refuse to use the Ultrasound Machine.

---

[9] *Id.*

4861-4820-1043, v. 3

108.    Plaintiff has continued to make loan payments on the Sofia machine, while its' radiologists refuse to use it due to its failures.

109.    As a result of Defendants' breaches of warranties, Plaintiff has been and will continue to be damaged.

## EIGHTH COUNT
### [UCC- Breach of Express Warranty]

110.    Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

111.    By selling the Ultrasound Machine to Radiology Center, Defendants are subject to N.J.S.A. §12A:2-313.

112.    N.J.S.A. §12A:2-313 imposes an express warranty when a seller makes any affirmation of fact or promise to the buyer "which relates to the goods and becomes part of the basis of the bargain…"

113.    N.J.S.A. §12A:2-105 defines goods as "all things … which are movable at the time of identification to the contract for sale..."

114.    Defendants, through their agents, intentionally and/or negligently misrepresented to Radiology Center that the Ultrasound Machine as a scanner would provide results equal to handheld ultrasound, e.g. a diagnostic device,  eliminating, or potentially eliminating, the need for handheld ultrasound to be performed by a sonographer.

115.    Hitachi advertised the Sofia component and expressly warranted that it was "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10 minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[10]

_____

[10] *Id.*

116.    These express warranties about the Sofia component were false.

117.    Plaintiff reasonably relied upon these warranties when making its' decision to purchase the Sofia component.

118.    The Ultrasound Machine was sold to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes.

119.    The Sofia component failed to perform basic functions, such as detecting cysts.

120.    Because the Sofia component could not perform basic ultrasound machine functions, Radiology Center's radiologists refuse to use the Ultrasound Machine.

121.    Plaintiff has continued to make loan payments on the Sofia machine, while its' radiologists refuse to use it due to its failures.

122.    As a result of Defendants' breaches of warranties, Plaintiff has been and will continue to be damaged.

## <u>NINTH COUNT</u>
### [UCC- Breach of Implied Warranty of Merchantability]

123.    Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

124.    By selling the Ultrasound Machine to Radiology Center, Defendants are subject to N.J.S.A. §12A:2-314.

125.    N.J.S.A. §12A:2-314 imposes an implied warranty that all goods shall be merchantable if the seller is a merchant in goods of that kind.

126.    N.J.S.A. §12A:2-105 defines goods as "all things … which are movable at the time of identification to the contract for sale..."

127.    Defendants are "merchants" of the subject goods and services, as defined by N.J.S.A. §12A:2-104.

15

128.    For goods to be merchantable, the item must pass without objection in the trade under the contract description… and must be fit for the for the ordinary purposes for which such goods are used. N.J.S.A. §12A:2-314(2)a and c.

129.    As manufacturers of ultrasound and other medical devices, Defendants regularly deal in the kinds of goods sold to Plaintiff.

130.    The Ultrasound Machine was sold to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes.

131.    The Sofia component failed to perform basic functions, such as detecting cysts.

132.    Despite repeated requests, Defendants have failed to repair, replace and/or refund the Purchase Price to Radiology Center.

133.    As a result of Defendants' violations of N.J.S.A. §12A:2-314(2)a and c,  Plaintiff has been and will continue to be damaged.

### TENTH COUNT
**[UCC- Breach of Implied Warranty of Fitness for a Particular Purpose]**

134.    Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

135.    By selling the Ultrasound Machine to Radiology Center, Defendants are subject to N.J.S.A. §12A:2-315.

136.    Pursuant to N.J.S.A. §12A:2-315 imposes an implied warranty where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill of judgment to select or furnish suitable goods…"

137.    N.J.S.A. §12A:2-105 defines goods as "all things … which are movable at the time of identification to the contract for sale..."

138.    The warranty of fitness of a particular purpose was not excluded or modified by either party.

139.    Defendants, through their agents, represented to Radiology Center, among other things, that the Ultrasound Machine was merchantable, would pass without objection within the trade, and as a scanner would provide results equal to handheld ultrasound, e.g. a diagnostic device, eliminating, or potentially eliminating, the need for handheld ultrasound to be performed by a sonographer.

140.    Hitachi advertised the Sofia component as "able to deliver scan times of 30 seconds per breast. In fact, bilateral whole-breast exams can be scheduled in 10-minute intervals [while]…handheld bilateral breast exams may take up to 30-45 minutes per exam."[11]

141.    Based upon Hitachi's misrepresentations, Plaintiff purchased the Ultrasound Machine.

142.    Prior to, and upon, entering into the Purchase Agreement with Hitachi, Hitachi was aware that the Ultrasound Machine was being purchased for the purpose of conducting medical scans and/or ultrasounds.

143.    Defendants reasonably expected Plaintiff to use the Ultrasound Machine in the represented manner.

144.    Plaintiff relied upon Hitachi and their agents' skill and/or judgment when purchasing the Ultrasound Machine.

145.    The Ultrasound Machine was sold to Radiology Center with a non-functioning or poorly functioning Sofia component not suitable for its intended purposes.

146.    The Sofia component failed to perform basic functions, such as detecting cysts.

147.    Despite repeated requests, Defendants have failed to repair, replace and/or refund

---

[11] *Id.*

the Purchase Price to Radiology Center.

148.    As a result of Defendants' violations of N.J.S.A. §12A:2-315, Plaintiff has been and will continue to be damaged.

## ELEVENTH COUNT
### [Unjust Enrichment]

149.    Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

150.    Because the Ultrasound Machine was sold to Radiology Center with a non-functioning or poorly functioning Sofia component that would not pass without objection in the trade and that was not suitable for its intended purposes, Defendants have and will continue to have the benefit of the Purchase Price monies paid by Plaintiff.

151.    Despite such benefit, Defendants have refused to repay Plaintiff the Purchase Price service contract monies that it is entitled to.

152.    As a direct result of their refusal to pay Plaintiff the monies it is entitled to, Defendants have, and will continue to be, unjustly enriched to Plaintiff's substantial detriment.

153.    Based on the foregoing, Plaintiff has, and will continue to be, damaged.

## TWELFTH COUNT
### [Breach of the Covenant of Good Faith and Fair Dealing]

154.    Plaintiff repeats and re-alleges each paragraph set forth above as if set forth at length herein.

155.    Every contract contains an implied covenant of good faith and fair dealing.

156.    By virtue of the Purchase Agreement, Defendants were required to act in good faith and deal fairly with the sale of the Ultrasound Machine.

4861-4820-1043, v. 3

157.    Defendants acted in bad faith when they sold the Ultrasound Machine with the Sofia component, failing to perform basic tasks such as detecting cysts.

158.    Plaintiff afforded Defendants numerous opportunities to rectify the issue(s) with the Sofia component, however, Defendants failed to cure the issue.

159.    As a direct and foreseeable result of Defendants' breach of the implied covenant of good faith and fair dealing, Radiology Center has incurred damages.

160.    Defendants' breach of the implied covenant of good faith and fair dealing was the proximate cause of the damages incurred by Radiology Center.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Fujifilm and Hitachi, jointly, severally and/or in the alternative, as follows:

        a.  Ordering Defendants to refund Plaintiff the Ultrasound Machine's Purchase Price of $261,129.42;

        b.  Compensatory damages;

        c.  Awarding Plaintiff all interest paid on the Commercial Loan;

        d.  For treble damages under the CFA, pursuant to <u>N.J.S.A.</u> §56:8-19;

        e.  For reasonable attorneys' fees and costs, pursuant to the CFA at <u>N.J.S.A.</u> §56:8-19;

        f.  Awarding pre- and post-judgment interest;

        g.  Awarding such other relief as equitable and appropriate under the circumstances.

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I certify that to the best of my knowledge and information and belief, the matter in controversy herein is not the subject of any proceeding pending in any Court or of any pending arbitration or administrative proceeding.

**MANDELBAUM BARRET PC**
*Attorneys for Plaintiff,*
*Radiology Center Management at Harding, Inc.*

By: */s/ Steven I. Adler*
      Steven I. Adler, Esq.

Dated:  March 20, 2023


## JURY DEMAND

Plaintiff Radiology Center Management at Harding, Inc., hereby demands a trial by jury on all triable issues.


**MANDELBAUM BARRET PC**
*Attorneys for Plaintiff,*
*Radiology Center Management at Harding, Inc.*

By: */s/ Steven I. Adler*
      Steven I. Adler, Esq.

Dated:  March 20, 2023

4861-4820-1043, v. 3