NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE RADIOLOGY CENTER AT HARDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> HITACHI HEALTCARE AMERICAS, FUJIFILM HEALTHCARE AMERICAS CORPORATION, <br><br> Defendants. | Civ. No. 23-01516 (CCC) <br><br> **OPINION & ORDER** |

**CECCHI, District Judge**

I. **INTRODUCTION**

This matter comes before the Court upon defendants Hitachi Healthcare Americas Corp.'s ("Hitachi") and Fujifilm Healthcare Americas Corp.'s ("Fujifilm") (collectively, "Defendants") motion to transfer venue, or, in the alternative, to dismiss plaintiff The Radiology Center at Harding, Inc.'s ("Plaintiff") complaint (ECF No. 1, "Compl.") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11. Plaintiff filed a response in opposition (ECF No. 18, "Opp."), and Defendants replied (ECF No. 20, "Reply"). The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion to transfer venue is **GRANTED**. Because this case will be transferred, the Court does not reach Defendants' motion for failure to state a claim.

II. **BACKGROUND**

The instant action arises out of Plaintiff's purchase of an allegedly defective Hitachi ultrasound machine (the "Ultrasound Machine"). Compl. ¶ 8. Plaintiff The Radiology Center at

Harding, Inc., is a New Jersey corporation located in Morristown and owned by Preetham Pillarisetty ("Pillarisetty"). *Id.* ¶¶ 1–2. Defendant Hitachi is an Ohio company.[1] *Id.* ¶ 3. The Ultrasound Machine at issue in this action is comprised of two components: the Arietta component, a handheld device, and the Sofia component, "a bed-like scanner." *Id.* ¶ 18. Hitachi advertises the Ultrasound Machine as an "Accurate, Efficient and Comfortable Breast Ultrasound," and specifically markets the Sofia component as providing a more comfortable and private way to conduct scans, ultrasounds, and mammograms. *Id.* ¶¶ 19–22 (capitalization in original). In reliance on these claims, on or about September 17, 2019, Plaintiff entered into an agreement with Hitachi to purchase the Ultrasound Machine for $199,950.00, along with a five-year service coverage plan for $44,954.00. *Id*. ¶¶ 8, 10, 23. The agreement between the parties, prepared for and executed by Plaintiff (the "Hitachi Agreement"), includes a provision (the "Ohio Forum Selection Clause") that reads:

> This contract shall be governed by the laws of the State of Ohio, without application of its conflict of laws provision. The customer and Hitachi Healthcare Americas Corporation agree to submit to the jurisdiction of the state or federal courts located in Ohio for any suits involving this agreement: with such jurisdiction and venue being exclusive.

ECF No. 1-1, Ex. B.

Plaintiff contends that following delivery of the Ultrasound Machine to its office on or about October 10, 2019, its "Sophia [sic] component never worked properly." Compl. ¶¶ 16, 24. Specifically, according to Plaintiff's radiologists, "[t]he Sofia component was unable to properly detect potentially cancerous cysts, a basic requirement for an ultrasound device," and Pillarisetty

---

[1] Hitachi was acquired by Fujifilm, also an Ohio company, on or about December 17, 2019. Compl. ¶ 17; *see* ECF No. 11-1 ("Def. Br.") at 1 n.1 ("As set forth in Defendants' Declaration of Corporate Citizenship statement, ECF No. 8, Hitachi Healthcare Americas Corporation no longer exists as a separate entity. As a result of a series of mergers, Hitachi Healthcare Americas Corporation is now FUJIFILM Healthcare Americas Corporation.").

2

notified Plaintiff's Hitachi sales representative, Aaron Morris ("Morris"), accordingly. *Id.* ¶¶ 25–27. Plaintiff avers that Hitachi was unable to repair the component despite three visits from a Hitachi service technician. *Id.* ¶¶ 28–30. Morris informed Plaintiff that its radiologists/technicians needed additional training to properly operate the machine, however the training did not occur due to the COVID-19 pandemic. *Id.* ¶¶ 31–32. Ultimately, Plaintiff alleges that its employees have been unable to use the Ultrasound Machine due to the Sofia component's incorrect readings, yet Plaintiff continues to make required payments on the loan taken to purchase it. *Id.* ¶¶ 44–45. Defendants' corporate representatives have not offered a replacement and/or loaner Ultrasound Machine, and instead have only offered to buy back the allegedly defective machine for $50,000.00. *Id.* ¶¶ 40–43.

On March 20, 2023, Plaintiff filed a complaint asserting claims for: violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.* (Count One); breach of contract (Counts Two, Three); fraud (Count Four); fraudulent inducement (Count Five); negligent misrepresentation (Count Six); breach of express warranty (Counts Seven, Eight); breach of implied warranty (Counts Nine, Ten); unjust enrichment (Count Eleven); and breach of the covenant of good faith and fair dealing (Count Twelve). *See* Compl. On May 16, 2023, Defendants filed the instant motion to transfer this case to the United States District Court for Northern District of Ohio[2] pursuant to 28 U.S.C. § 1404(a) in light of the forum selection provision contained in the Hitachi Agreement, or, in the alternative, for dismissal for failure to state a claim

---

[2] Defendants note that "the United States District Court for the Northern District of Ohio would be the best transferee court because Hitachi Healthcare Americas Corporation's principal place of business falls within the Northern District of Ohio," but add that "transfer to the Southern District of Ohio would also be proper under the parties' agreed upon forum selection clause." Def. Br. at 6 n.3. Plaintiff does not express a position on which Court is proper or preferred. *See generally* Opp. Therefore, the Court will accept Defendants' contention that the Northern District of Ohio is the logical transferee court.

3

under Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. 11.  Plaintiff opposed the motion (*see* Opp.), and Defendants replied (*see* Reply).

### III.  LEGAL STANDARD

**Venue Transfer (28 U.S.C. § 1404)**

A party may move to transfer a civil action pursuant to 28 U.S.C. § 1404, which provides in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "Generally, '[t]he burden of establishing the need for transfer ... rests with the movant,' and 'in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed.'" *Steinmetz v. McGraw–Hill Glob. Educ. Holdings, LLC*, 220 F. Supp. 3d 596, 600 (E.D. Pa. 2016) (citations omitted); *see also Van Dyke v. Schultz*, No. 14–3296, 2015 WL 225816, at *2 (D.N.J. Jan. 15, 2015).

"A court ordinarily evaluates a § 1404(a) motion by considering factors such as the convenience of the parties and the relevant public interests."  *Steinmetz*, 220 F. Supp. 3d at 600 (citation omitted).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013) (citation omitted).  "Because forum selection clauses are 'bargained for by the parties,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'"  *Steinmetz*, 220 F. Supp. 3d at 601 (citations omitted).  Indeed, "[a]s the party acting in violation of the forum-selection clause, [Plaintiff] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer."  *Atl. Marine*, 571 U.S. at 66.  The relevant public-interest factors are:

> (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Mancuso v. L'Oreal USA, Inc.*, No. 20-cv-5701, 2021 WL 365228, at *6 (D.N.J. Feb. 1, 2021) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-90 (3d Cir. 1995)).  To summarize, "before enforcing a forum-selection clause, a court must determine that:  (1) the clause is valid; (2) it governs the dispute; and (3) public-interest factors do not override the parties' contractual choice of venue."  *ComTec Sys., Inc. v. Farnam St. Fin. Inc.*, No. 1:21-CV-19406, 2021 WL 5997991, at *2 (D.N.J. Dec. 20, 2021).

**IV.     DISCUSSION**

    **A. The Forum-Selection Clause Is Valid and Governs the Dispute.**

The first step of the inquiry is to determine whether there is a valid forum selection clause.  "Forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances,' or obtained by 'fraud, undue influence, or overweening bargaining power.'"  *Steinmetz*, 220 F. Supp. 3d at 601 n.3 (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)); *see also Fernandes v. Deutsche Bank Nat'l Trust Co.,* 157 F. Supp. 3d 383, 389 (D.N.J. 2015).  As an initial matter, Plaintiff does not contend "that the [Ohio] Clause itself was a result of fraud or overarching."  Opp. at 7.  Instead, Plaintiff contends that enforcement of the Ohio Forum Selection Clause "would violate New Jersey's strong public policy and result in litigation so seriously inconvenient as to be unreasonable."  *Id.*  This argument is predicated on the notion that only a subset of Plaintiff's causes of action fall within the ambit of the Ohio Forum Selection Clause and, therefore, would be transferred upon its enforcement, resulting in piecemeal litigation.  *See id.* at 5–7.  According to Plaintiff, the resulting simultaneous actions–one encompassing the claims transferred to Ohio

5

and the other litigating the claims remaining in New Jersey—would violate New Jersey policy against claim splitting and the preference for resolving a controversy in one comprehensive litigation.³ *Id.*

Plaintiff's argument, in sum and substance, challenges the enforceability of the Ohio Forum Selection Clause based on its scope. "A scope-based challenge to the applicability of a forum-selection clause presents a quintessential question of contract interpretation." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98 (3d Cir. 2018). The Third Circuit "ha[s] stressed that 'whether or not a forum selection clause applies' to a particular dispute 'depends on what the specific clause at issue says.'" *Id.* (citations omitted). Here, the relevant provision in the Hitachi Agreement establishes that "The customer and Hitachi Healthcare Americas Corporation agree to submit to the jurisdiction of the state or federal courts located in Ohio for *any suits involving this agreement*: with such jurisdiction and venue being exclusive." ECF No. 1-1, Ex. B (emphasis added). Plaintiff argues its claims involving the allegedly defective machine do not fall within the scope of the Hitachi Agreement's Ohio Forum Selection Clause and are instead governed under a separate "Purchase Agreement" that contains no forum selection clause. *See* Opp. at 1, 4–5. Accordingly, Plaintiff believes that only service coverage plan-related claims would be governed by the Hitachi Agreement. *See id.* The Court disagrees.

First, the document that Plaintiff cites to as the "Purchase Agreement," ECF No. 1-1, Ex. A (*see* Compl. ¶ 8), is labeled as "INVOICE 1774" and does not appear to establish a contractual agreement amongst the parties. Second, contrary to Plaintiff's contentions, the Hitachi Agreement,

---

³ To the extent Plaintiff challenges enforcement of the Ohio Forum Selection Clause such that it is unreasonable for it to litigate the *entire* case there, rather than New Jersey, the Court is not persuaded. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64.

which Plaintiff identifies as the "Service Agreement" (*see* Compl. ¶ 10), governs more than just the five-year service coverage plan—it clearly discusses "sell[ing] *products* described herein," not just services, and explicitly identifies the two Ultrasound Machine components that are being sold under "[t]his contract for the sale of *goods*." ECF No. 1-1, Ex. B (emphasis added). Accordingly, the claims asserted by Plaintiff in this suit—each of which stems from the purchase of and inability to use Hitachi's allegedly defective product (*see generally* Compl.)—"involve[e] th[e] agreement." ECF No. 1-1, Ex. B

Further, the mere fact that Plaintiff's claims extend beyond breach of contract do not render such claims outside the scope of the Ohio Forum Selection Clause. *See*, *e.g.*, *Buckeye Polymers, Inc. v. Bunting Magnetics Co.*, No. 4:19CV1256, 2019 WL 4451351, at *3 (N.D. Ohio Sept. 16, 2019) ("Plaintiffs' claims of negligent misrepresentation and promissory estoppel, though cloaked as non-contractual causes of action, are derived from their contractual agreement with Defendant . . . . The parties' relationship regarding the Equipment is governed wholly by the contract that they entered which contains the valid forum selection clause."). Indeed, Ohio federal courts have established that "'[p]ublic policy supports a broad reading of forum selection clauses. If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims.'" *Varsity Gold, Inc. v. Koone*, No. 3:08 CV 528, 2009 WL 10690075, at *5 (N.D. Ohio Jan. 20, 2009) (quoting *Traveler's Property Cas. Co. of America v. Centimark, Corp.*, 2005 WL 1038842 (S.D. Ohio 2005)). Accordingly, the Court finds that the agreement between the parties, the Hitachi Agreement, contains a valid forum-selection clause that governs the dispute at issue in its entirety. Therefore, contrary to Plaintiff's contentions, piecemeal litigation as to violate New Jersey public policy would not ensue from enforcement of the clause.

## B. The Public-Interest Factors Do Not Bar Transfer.

"Once a district court determines that a forum-selection clause is valid and applies to a dispute between parties, it 'may consider arguments about public-interest factors only' before granting a motion to transfer." *ComTec Sys.*, 2021 WL 5997991, at *2 (quoting *Atl. Marine*, 571 U.S. at 64). "Courts should only bar enforcement of a valid and applicable forum-selection clause in the 'unusual case[]' where public-interest factors override the parties' contractual choice of venue." *Id.* at *3 (quoting *Atl. Marine*, 571 U.S. at 582).

Turning to the first public-interest factor, both sides agree that "enforceability of the judgment" is neutral as "a judgment from either district could easily be registered in another district." *Mancuso*, 2021 WL 365228, at *6; *see* Def. Br. at 8–9; Opp. at 8.

Next, examining "practical considerations that could make the trial easy, expeditious, or inexpensive," Defendants argue this factor is neutral "because there are no apparent efficiencies that would favor adjudicating this dispute in New Jersey rather than Ohio." Def. Br. at 9. Plaintiff contends this factor cuts against transfer based on the notion that enforcement of the forum selection clause would result in parallel piecemeal litigation. Opp. at 8–9. However, as discussed above, all claims would be transferred to Ohio. Plaintiff does not identify other practical considerations that would favor trial in New Jersey. Therefore, this factor is also neutral.

The third factor, congestion of the courts in the two fora, is likewise neutral. Either court can effectively adjudicate this case. *See Mancuso*, 2021 WL 365228, at *6.

The fourth factor considers the "local interests in deciding local controversies at home." Plaintiff argues that New Jersey has a local interest both "in protecting in-state businesses like Plaintiff" and because at least some of the allegedly wrongful conduct occurred here. Opp. at 10–11. However, Ohio, too, has a local interest in adjudicating contracts made under its laws, like the

Hitachi Agreement. Def. Br. at 9; *see ComTec Sys.*, 2021 WL 5997991, at *3 ("Further, this case is not merely a local dispute. While Plaintiff brings its claims under New Jersey law, the dispute concerns an agreement made under Minnesota law between New Jersey and Minnesota corporations. New Jersey has an interest in protecting its corporate citizens from fraud, but so too does Minnesota in effectuating (at least allegedly valid) contracts made under its laws."). Therefore, this factor is also neutral.

The fifth factor weighs the "public policies of the fora." Defendants argue this cuts in favor of transfer "because both New Jersey and Ohio's public policy favor enforcing contracted provisions, including forum selection clauses." Def. Br. at 9; *see Mancuso*, 2021 WL 365228, at *6 ("[T]he fifth factor weighs strongly in favor of enforcing the forum selection clause because of New Jersey . . . public policy in favor of enforcing contractual provisions, including forum selection clauses."). Plaintiff acknowledges this but claims "enforcing the Forum Selection Clause violates New Jersey public policy as set forth in the Entire Controversy Doctrine." Opp. at 11. However, transfer of the entire action would not implicate the Entire Controversy Doctrine and thus would not run afoul of New Jersey public policy as Plaintiff contends. Therefore, this factor weighs in favor of transfer.

The final factor considers "the familiarity of the trial judge with the applicable state law in diversity cases." The agreement between the parties calls for it to be "governed by the laws of the State of Ohio." ECF No. 1-1, Ex. B. To the extent New Jersey law must be applied for any of Plaintiff's claims, district judges outside of this state have routinely done so, including Ohio federal judges adjudicating NJCFA claims. *See, e.g.*, *In re Ford Motor Co., Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, No. 1:12-MD-2316, 2014 WL 3778592 (N.D. Ohio July 30, 2014) (motion for summary judgment on NJCFA claim); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp.

9

2d 801, 856 (S.D. Ohio 2012) (motion to dismiss NJCFA claim); *see also Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 187 (E.D.N.Y. 2003) ("[F]ederal courts are deemed capable of applying the law of other states." (citation omitted)).  Therefore, this factor is neutral, if not slightly in favor of transfer.

## V.     CONCLUSION

Having determined that there is a valid forum selection clause that covers the present dispute in its entirety, and that the parties' agreed-upon forum selection clause should be enforced because Plaintiff has failed to meet its "burden of showing that public-interest factors overwhelmingly disfavor a transfer," *Atl. Marine*, 571 U.S. at 67, the Court concludes that transfer is appropriate under 28 U.S.C. § 1404(a).

**Accordingly, IT IS**, on this 12th day of January, 2024,

**ORDERED** that the Defendants' motion to transfer (ECF No. 11) is **GRANTED**;[4] and it is further

**ORDERED** that the Clerk of the Court shall transfer this matter to the United States District Court for the Northern District of Ohio; and it is further

**ORDERED** that the Clerk of the Court shall close this matter.

**SO ORDERED.**

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

---

[4] Because this matter will be transferred to the proper venue, the Court does not address the merits of Defendants' motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).